**FILED**
**Lucinda B. Rauback, Clerk**
**United States Bankruptcy Court**
**Augusta, Georgia**
*By jpayton at 5:50 pm, Mar 31, 2017*

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Augusta Division

| | |
|---|---|
| IN RE:<br><br>LARRY I. SMITH<br><br>      Debtor | Chapter 7 Case<br>Number <u>14-10381</u> |
| GUY G. GEBHARDT, ACTING UNITED<br>STATES TRUSTEE, REGION 21<br><br>      Plaintiff<br><br>v.<br><br>LARRY I. SMITH<br><br>      Defendant | Adversary Proceeding<br>Number <u>15-01010</u> |

<u>**OPINION AND ORDER**</u>

This Order addresses the United States Trustee's ("UST") complaint to revoke Larry Smith's ("Debtor's") discharge pursuant to 11 U.S.C. §727(d)(1) and (d)(2), along with the Debtor's oral Motion for Judgment on Partial Findings.[1]  This is a core proceeding

---

[1]  At the close of the UST's case in chief, Debtor moved for a judgment on partial findings pursuant to Federal Rule of Civil Procedure 52(c) made applicable to this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7052.  The Court deferred ruling on Debtor's motion until close of evidence.  <u>See</u> Fed. R. Civil P. 52(c)(allowing a court to decline to render any judgment until the close of the evidence).

pursuant to 28 U.S.C. §157(b)(2)(J) and the Court has jurisdiction to address the matter pursuant to 28 U.S.C. §1334. For the following reasons, the Debtor's discharge is revoked, and the Debtor's Motion is denied.

### **FINDINGS OF FACT**

Debtor, an attorney, filed for chapter 7 bankruptcy relief on March 3, 2014. At the time he filed his bankruptcy petition, Debtor was married to Lynne Smith ("Mrs. Smith"). Mrs. Smith has not filed bankruptcy. Debtor's bankruptcy schedules list a 20% fractional ownership interest in a vacation beach house and lot on Fripp Island, S.C. ("Fripp Property") and list the interest as owned jointly by Debtor and Mrs. Smith. Tr. Hr'g 05/17/16, Pl. Ex. 1. However, as of the petition date, legal title to the Fripp Property was vested solely in Debtor's name, subject to Mrs. Smith's claim of a purported equitable interest. Debtor testified he owned the Fripp Property prior to his marriage to Mrs. Smith. Tr. Hr'g 05/17/16 246:1-3. His bankruptcy schedules value the 20% interest in the Fripp Property at $95,000.00. Tr. Hr'g 05/17/16, Pl. Ex. 1.

Prior to filing his bankruptcy case, Debtor and his wife had been trying to sell the Fripp Property for several years. Through the years, Debtor had several conversations with Edgar L. Perry ("Mr. Perry") about the sale of the Fripp Property. Mr. Perry has been Debtor's neighbor in Augusta and the families have been friends for years. Mr. Perry's grown children always have

2

encouraged him to purchase the Fripp Property, but in the past, Mr. Perry was not interested in the property and he thought the price of more than $125,000.00 for a fractional interest was too high when extrapolated out to value  the whole property.  Tr. H'rg 05/17/16 41:1-14, 42:5-8.

After Debtor filed his bankruptcy petition, Mr. Perry approached Debtor and said, "if it'll help you, I will buy [Fripp Property] from you for $125,000.00."  Tr. H'rg 05/17/16 41:20-25-42:1-12. At that time, Mr. Perry did not know whether Debtor was in bankruptcy, but he had heard Debtor was experiencing financial difficulty.  Debtor had not solicited this offer and did not negotiate or set this $125,000.00 price, but he told Mr. Perry he would think about the offer. Ultimately, Debtor accepted the offer and told Mr. Perry he was working on getting the sale all worked out.  Tr. H'rg 05/17/16 42:12-20.  At the conclusion of these conversations, Mr. Perry understood he and Debtor had an agreement for Mr. Perry to purchase the Fripp Property for $125,000.00 once Debtor worked out the details. Tr. H'rg 05/17/16 43:13-14.  Some weeks passed and Mr. Perry asked Debtor about the status of the sale.  Debtor informed him he was still working on it.  Tr. H'rg 05/17/16 43:21-25-44:1-14. Mr. Perry was concerned "because summer was approaching and my kids were lining up vacations . . . we got to know because . . . if we're not going to buy the place, we're going to have to rent a place, you know . . . we don't want to rent it and

3

then buy it or whatever . . . I kept pushing him at the end." Tr. H'rg 05/17/16 44:18-25-45:5.

During this time, Debtor also was working on getting the Fripp Property out of his bankruptcy estate for the benefit of his non-debtor wife, Mrs. Smith. Debtor met with the Chapter 7 Trustee ("Trustee") on two occasions and discussed the Fripp Property. Prior to starting the official §341 meeting held in the Trustee's office,[2] Debtor asked the Trustee to abandon the Fripp Property to Mrs. Smith. At that time, Debtor told the Trustee he was experiencing marital difficulties and the Fripp Property was all he had to give Mrs. Smith for her support if they were to divorce. Tr. H'rg 05/17/16 76:6-21. At the trial, Mrs. Smith claimed an equitable interest in the Fripp Property because she had put a lot of time, effort, and money into the Fripp Property. Tr. H'rg 05/17/16 67:14-21. The Trustee said he would consider the request. Tr. H'rg 05/17/16 76:6-21.

After the §341 meeting, the Trustee informed Debtor via a May 27, 2014 letter that he would not be able to abandon the Fripp Property "without making some effort to liquidate the interest." Pl.'s Ex. 4. In the letter, the Trustee also asked Debtor to provide any written agreements with the co-owners of the Fripp

---

[2] The Trustee held the meeting in his office as an accommodation to the Debtor, a fellow attorney. Tr. H'rg 05/17/16 75:3-19.

4

Property that may impact the Trustee's attempt to sell the property. Pl.'s Ex. 4. Within days of the May 27th letter, Debtor called the Trustee and asked to meet with him.   Tr. H'rg 05/17/16 78:5-14. They met in the Trustee's office on the very day of the phone call. Id.  At this meeting, Debtor asked the Trustee what it would take for him to sell the property to Mrs. Smith, and Debtor extended an offer on her behalf to purchase the property for $20,000.00.   Tr. H'rg 05/17/16 79:5-9.  After negotiating with Debtor, the Trustee ultimately agreed to sell the Fripp Property to Mrs. Smith for $25,000.00.  Pl.'s Ex. 2.  The Trustee's rationale for the sale was it would enable him to reach a quick conclusion of Debtor's bankruptcy case, while providing a dividend to Debtor's creditors without having to litigate Mrs. Smith's potential interest, if any, in the Fripp Property.  The Trustee also recognized the sale of a fractional interest in a vacation beach house with at least three other owners could be difficult.  Tr. H'rg 05/17/16 79:5-20.  During the negotiations, the Trustee never asked Debtor whether there were any current offers to purchase the Fripp Property, nor did Debtor volunteer the fact that Mr. Perry had already agreed to buy the property for $125,000.00.  Tr. H'rg 05/17/16 79:21-23.

Approximately six days after the Trustee agreed to sell the Fripp Property to Mrs. Smith for $25,000.00, Mr. Perry and Mrs. Smith entered into a written sales contract, prepared by Debtor, whereby Mrs. Smith would sell the Fripp Property to Mr. Perry for

5

$125,000.00 ("Perry Sales Contract").  Pl.'s Ex. 5.  The contract states in pertinent part:

> WHEREAS, SELLER's husband, Larry I. Smith, is the current owner of record on an undivided 21%[3] interest in the [Fripp Property] subject to the equitable interest owned by SELLER and subject to the interest claimed by the Trustee of the Bankruptcy Court, Southern District of Georgia, and WHEREAS SELLER will obtain title to the within described property upon approval of the transfer of interest from SELLER's husband and the Trustee to the SELLER by the Bankruptcy Court
>
> .
> .
> .
> .
>
> The purchase and sale of the subject property shall be closed on or before One(1) week after approval by the Bankruptcy Court referred to above.  Possession of the property shall be delivered to the BUYER at the closing; however, BUYER shall have the right to the use of the [Fripp Property] to the same extent as SELLER Immediately upon the execution of this Agreement.

Pl.'s Ex. 5.

After the Trustee agreed to sell the Fripp Property to Mrs. Smith, he initially heard about the Perry sale through a casual Sunday school conversation with Mr. Perry's son.  Tr. H'rg 05/17/16 82:4-25.  The Trustee promptly contacted Debtor's attorney to determine the details of this purported sale.  Tr. H'rg 05/17/16

---

[3] Debtor's schedules reflect a 20% ownership interest.  This discrepancy is not relevant to the current dispute.

83:8-13. Debtor's counsel informed the Trustee that the Debtor's agreement with Mr. Perry was a summer rental arrangement, not a sale. Tr. H'rg 05/17/16 93:8-14. Upon cross-examination, the Trustee stated he would not be surprised if there was a lease agreement that predates the Perry Sales Contract, but the lease agreement was never shown to the Trustee or disclosed in Debtor's bankruptcy schedules. Tr. H'rg 05/17/16 127:9-14. The Trustee did not ask Debtor's counsel to provide him with a copy of the purported lease agreement.

After these discussions with Debtor's counsel, the Trustee was satisfied there was no pending sale so he proceeded on June 19, 2014 to file a Motion to Sell the Fripp Property to Mrs. Smith for $25,000.00. Pl. Ex. 2. After filing the motion, the Trustee received a call from Mr. Perry's counsel informing him of the Perry Sales Contract. Tr. H'rg 05/17/16 98:3-5. In response, on July 8, 2014, the Trustee withdrew his Motion to Sell the Fripp Property to Mrs. Smith. Pl. Ex. 2-A. Debtor received his bankruptcy discharge eight days after the Trustee withdrew the Motion to Sell. Chap. 7 Case No. 14-10381, Dckt. No. 38.

Soon after the Trustee withdrew the Motion to Sell, Mrs. Smith filed a petition for separate maintenance against Debtor in the Superior Court of Richmond County Georgia. Pl. Ex. 3-A. On August 4, 2014, pursuant to an uncontested order from the Superior

AO 72A
(Rev. 8/82)

Court, Debtor executed a quit claim deed conveying the Fripp Property to Mrs. Smith.  Pl. Exs. 3-A and 3-C.  This was done without bankruptcy court approval, but the Trustee knew of the separation proceedings.  When questioned why on cross examination why he chose not to attend the Superior Court hearing the Trustee stated he considered the disposition of Debtor's interest in the Fripp Property to be void ab initio because it was conducted in violation of the Bankruptcy Code's §362 automatic stay.  Tr. H'rg 05/17/16 154:1-19.

After asking for a copy of the Perry Sales Contract and not receiving one, the Trustee ultimately subpoenaed Debtor's counsel for production of a copy of the contract and he finally received it on September 9, 2014.  Tr. H'rg 05/17/16 99:6-18.  Upon receipt of the contract, the Trustee moved for a 2004 exam of Mrs. Smith.  When the Trustee discovered the extent of Debtor's conduct, he informed the UST of Debtor's and Mrs. Smith's actions in an email dated November 11, 2014.

On December 1, 2014, the Trustee commenced an adversary proceeding against Debtor and Mrs. Smith seeking damages for willful violation of the automatic stay and requesting an order be entered setting aside the quit claim deed from Debtor to Mrs. Smith as void ab initio.  Pl. Ex. 3-A.  Ultimately, in March 2015, the Trustee filed a motion to approve a compromise of this adversary proceeding,

8

whereby the Trustee and Mrs. Smith agreed to sell their respective interests in Fripp Property to third parties[4] for $60,000.00. Pl.'s Ex. 3B. This motion was approved without objection on April 14, 2015. Pl.'s Ex. 3C. The bankruptcy estate received $30,000.00 in the compromise; and Mrs. Smith received the remaining $30,000.00. Id.

In February 2015, before the compromise of the Trustee's adversary, the UST filed the current adversary proceeding seeking to revoke Debtor's bankruptcy discharge for his purported fraudulent conduct related to the Fripp Property. The UST also claims Debtor's schedules greatly undervalue the personal property associated with the Fripp Property. The Perry Sales Contract attributes $15,000.00 of the purchase price to the Fripp personal property, as opposed to the $1,100.00 personal property valuation set forth in Debtor's bankruptcy schedules. Pl. Ex. 5. Debtor testified he valued the personal property much higher in the Perry Sales Contract to reduce the real estate ad valorem transfer tax. Tr. H'rg 05/17/16 225:9-16.

Also relevant to the pricing issue, as of the filing of the bankruptcy petition, Debtor was delinquent in paying his share of the taxes, repairs and costs associated with the Fripp Property.

---

[4]   Mr. Anderson and Mr. Rhoden purchased the property. These buyers already owned fractional interests in the property.

Tr. H'rg 05/17/16 28:21-25; 29:9-14; 64:23-25-65:1-2. In the Trustee's Motion to Sell the Fripp Property to Mrs. Smith, the property was to be sold subject to those charges. Pl.'s Ex. 2. In the Perry Sales Contract, Mrs. Smith agreed to pay these charges. Pl.'s Ex. 5. In the sale ultimately approved by the Court, the third party buyers agreed to assume these charges. Pl.'s Exs. 3B and 3C.

In defense of the UST's allegations, Debtor testified on his own behalf.[5] Debtor testified he has been an attorney for almost 40 years and has been on the Georgia State Bar's disciplinary board investigative panel for the last 9 years. Tr. H'rg 05/17/16 210:1-12. Debtor's practice does not include or specialize in bankruptcy. Tr. H'rg 05/17/16 215:11-16. Debtor filed for chapter 7 bankruptcy relief after several years of his law firm struggling financially due to the illness of Debtor's law partner. Tr. H'rg 05/17/16 212:1-25. This financial struggle put a strain on Debtor's marriage as he attempted to shoulder these financial difficulties alone without concerning his wife. Id. Debtor stated that, over the years, Mrs. Smith had to use some of her own money to maintain the Fripp Property. Tr. H'rg 05/17/16 213:7-9. Debtor testified

---

[5]   Debtor's evidence, including his testimony was not considered in the Court's consideration of Debtor's Rule 7052 motion.

10

that they considered the Fripp Property her property.   Tr. Hr'g 05/17/16, 230:18-19.   Ultimately, after several years of struggling financially, and when facing foreclosure on his personal residence, Debtor filed for bankruptcy.   Tr. H'rg 05/17/16 215:20-24.

When Debtor and Mrs. Smith met with his bankruptcy counsel, they made it clear that "whatever happened, we consider [the Fripp Property] to be [Mrs. Smith's] and we wanted to do everything within legal means, of course, to have her come out of this with [the Fripp Property]."   Tr. H'rg 05/17/16 215:7-10. Debtor also testified he had been talking to Mr. Perry for years about the sale of the Fripp Property and Mr. Perry was not interested in buying the property.   Tr. H'rg 05/17/16 216:23-25-217:1-5.   Debtor and Mrs. Smith were very close friends and neighbors of Mr. and Mrs. Perry.   Tr. H'rg 05/17/16 218:18-25-219:1-9.   When Mrs. Perry became terminally ill, Mrs. Smith cared for her during her long health battle.   Id.

When the Trustee refused to abandon the Fripp Property, Debtor immediately contacted and met with the Trustee and tendered Mrs. Smith's offer to purchase the Fripp Property for $20,000.00 with money she would borrow from her sister.   Tr. H'rg 05/17/16 234:3-23.   Debtor said he always listened carefully to the Trustee's questions and the Trustee never asked him what Mrs. Smith intended to do with the Fripp Property or if Debtor knew of any offers to

11

purchase the Fripp Property.  Tr. H'rg 05/17/16 247:1-14.  Debtor acknowledged he did not voluntarily disclose the agreement he reached with Mr. Perry or the Perry Sales Contract.  He never thought he needed to voluntarily disclose the existence or terms of Mr. Perry's agreement or contract to the Trustee.  He viewed this as a negotiation with the Trustee and did not think Mr. Perry's deal had anything to do with Debtor's bankruptcy.  Tr. H'rg 05/17/16 235:18-25.  According to Debtor, Mr. Perry would not purchase the Fripp Property from the Trustee if the purchase did not benefit Mrs. Smith.  Id.

Debtor denies any allegations that Mrs. Smith's complaint for separate maintenance were part of an effort to shield the Fripp Property from his creditors.  Tr. H'rg 05/17/16 238:17-25.  In fact, he states he did not know of the separate maintenance action until he was asked to acknowledge service.  Id.  Nevertheless, Debtor admits he did not contest giving Mrs. Smith the Fripp Property.  Tr. H'rg 05/17/16 249:7-20.

Debtor also admits he drafted the $125,000.00 Perry Sales Contract and at the time he had his wife and Mr. Perry sign the contract, Debtor knew the Trustee had agreed to sell the Fripp Property to Mrs. Smith for $25,000.00.  Tr. H'rg 05/17/16 245:6-22. Debtor never amended his bankruptcy schedules to value the Fripp Property at $125,000.00.

12

## CONCLUSIONS OF LAW

For the following reasons and after considering the evidence, Debtor's Rule 7052(c) motion is denied and Debtor's discharge is revoked pursuant to 11 U.S.C. §727(d)(1) and (d)(2).

**Judgment on Partial Findings**.

At the conclusion of the UST's case in chief, Debtor moved for a Judgment on Partial Findings pursuant to Federal Rule of Civil Procedure 52(c) made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 7052. Federal Rule 52(c) states in pertinent part:

> If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. The court may, however, decline to render any judgment until the close of the evidence. A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a).

Fed. R. Civ. P. 52(c). The advisory committee notes states:

> "Judgment entered under this rule differs from a summary judgment under Rule 56 in the nature of the evaluation made by the court. A judgment on partial findings is made after the court has heard all the evidence bearing on the crucial issue of fact, and the finding is reversible only if the appellate court finds it to be "clearly erroneous." A summary judgment, in contrast, is made on the basis of facts established on account of the absence of

13

> contrary evidence or presumptions; such establishments of fact are rulings on questions of law as provided in Rule 56(a) and are not shielded by the "clear error" standard of review."

Fed. R. Civ. P. 52, advisory committee note to 1991 Amendment.

Unlike a summary judgment analysis, "[i]n ruling on a Rule 52(c) motion, the court should 'evaluate the evidence without making special inferences in the Plaintiff's favor . . . and [should] resolve the case on the basis of preponderance of the evidence.'" Grant v. Bullock Cnty. Bd. of Educ., 895 F. Supp. 1506, 1509 (M.D. Ala. 1995) (citing Emerson Elec. Co. v. Farmer, 427 F.2d 1082, 1086 (5th Cir. 1970)). For the following reasons, and after considering the UST's case in chief,[6] Debtor's motion for partial judgment is denied as the Court concludes the UST has carried his burden by a preponderance of the evidence that Debtor's discharge should be revoked. Through the testimony and evidence elicited during the UST's case in chief, the UST established that Debtor engaged in a fraudulent scheme to retain the benefit of the sale of the Fripp Property for himself and his wife that if known by the UST prior to discharge would have prevented Debtor's discharge, and through his actions became entitled to acquire property that would have been

---

[6] For this Rule 52(c) analysis the Court only considered the testimony of the Trustee, Mrs. Smith, and Mr. Perry as well as the UST's exhibits admitted into evidence as of the close of the UST's case.

14

property of the estate and knowingly and fraudulently failed to report such entitlement to the Trustee.

**11 U.S.C. §727(d)(1)**.[7]

> Section 727(d)(1) states in pertinent part:
>
> On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if-
>
> > (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge. . . .

11 U.S.C. §727(d)(1). "The phrase 'discharge was obtained through the fraud of the debtor' has been construed to refer to the behavior that would be sufficient for the denial of discharge under §727(a)(2)-(5)." In re Osborne, 476 B.R. 284, 292 (Bankr. D. Kan. 2012); see also In re Smith, 489 B.R. 875, 891 (Bankr. M.D. Ga. 2013)("When a §727(d)(1) claim is based on §727(a)(4)(A), the elements partially merge, and a plaintiff states a claim under §727(d)(1) if she states a claim under §727(a)(4)(A) and alleges no knowledge of the fraud before the discharge."); Jones v. U.S. Trustee, 736 F.3d 897 (9th Cir. 2013)(material fraud which would

---

[7] For organizational purposes only, the §727(d) legal analysis of this order is divided by subheadings. Nevertheless, the subheadings are not intended to limit the analysis solely to the subheading, rather, the analysis in such subheadings applies to the overall §727(d) analysis.

AO 72A
(Rev. 8/82)

have resulted in denial of discharge had it been known at the time can justify subsequent revocation of discharge); In re Staub, 208 B.R. 602 (Bankr. S.D. Ga. 1997)(discharge revoked for failure to disclose checking account, business income and military service income); In re DePriest, 414 B.R. 518 (Bankr. W.D. Mo. 2009)(discharge revoked for failure to disclose 100% ownership interest in limited liability company and monthly income); In re Reese, 203 B.R. 425 (Bankr. N.D. Ill. 1997)(discharge revoked for failure to disclose entitlement to federal and state tax returns).

A court shall revoke a debtor's discharge pursuant to §727(d)(1), if:

> (1) the debtor obtained the discharge through fraud;
> (2) the [UST] possessed no knowledge of the debtor's fraud prior to the granting of the discharge; and
> (3) the fraud, if known, would have resulted in the denial of the discharge under 11 U.S.C. §727(a).

In re Matos, 267 F. App'x 884, 887 (11th Cir. March 6, 2008). Revocation of a discharge under §727(d)(1) is an extraordinary remedy and "requires both the existence of fraud in procuring the discharge and proof that the party requesting the revocation of the discharge did not know of such fraud until after the granting of the discharge." In re Putnam, 85 B.R. 881, 883 (Bankr. M.D. Fla. 1988). The party seeking revocation of a discharge bears the burden of

16

proving the conditions of §727(d) have been met by a preponderance of the evidence. <u>Grogan v.Garner</u>, 498 U.S. 279, 288 (1991). Courts construe the provisions of 11 U.S.C. §727(d) liberally in favor of debtors. <u>In re Matos</u>, 267 F. App'x at 886. "The reasons [to revoke a discharge] must be real and substantial, not merely technical and conjectural." <u>Id.</u>

The UST argues the Debtor's discharge should be revoked because Debtor's behavior falls within the scope of 11 U.S.C. §727(a)(4)(A) which provides:

> (a)   The   court   shall   grant   the   debtor   a discharge, unless–
>
>> (4)   the   debtor   knowingly   and fraudulently, in or in connection with the case–
>>
>>> (A)   made   a   false   oath   or account. . . .

11 U.S.C. §727(a)(4). In this case, the UST contends Debtor knowingly and fraudulently made a false oath or account in connection with his bankruptcy. The UST further contends had the Debtor's fraud been known, it would have resulted in denial of the Debtor's discharge under 11 U.S.C. §727(a)(4)(A) and that the UST did not know of the fraud until after entry of Debtor's bankruptcy discharge.

To prevail, on the first element, the UST must establish by a preponderance of the evidence that Debtor made "a false oath,

17

that it was material, and that it was made knowingly and fraudulently." In re Geer, 522 B.R. 365 (Bankr. N.D. Ga. 2014). Concealment, silence or omission can constitute a misrepresentation under §727(a)(4)(A), as the veracity of a debtor's statements are essential to the successful administration of the bankruptcy case. In re Chalik, 748 F.2d 616, 618 (11th Cir. 1984); Spicewood v. Ginn, 924 F.2d 230, 232 (11th Cir. 1991)(deliberate omissions by the debtor may result in the denial of a discharge under §727(a)(4)(A)); In re Severino, 2011 WL 1118521, at *5 (M.D. Fla. March 25, 2011)(deliberate omissions constitute a false oath). Material misrepresentations are ones that bear a relationship to the debtor's "business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of property." In re Chalik, 748 F.2d at 618. Actual detriment to creditors need not be shown for the UST to prevail. Id.

In this case, Debtor's bankruptcy schedules clearly disclose his fractional ownership interest in the Fripp Property. However, the UST has established by a preponderance of the evidence that Debtor, a sophisticated attorney, engaged in fraudulent conduct by not disclosing his agreement with Mr. Perry to purchase the Fripp Property for $125,000.00, while Debtor was simultaneously negotiating with the Trustee to sell the same property to Debtor's wife for $20,000.00. He structured the transaction and drafted the

AO 72A
(Rev. 8/82)

Perry Sales Contract whereby Debtor's wife, a non-debtor insider, would sell the Fripp Property to Mr. Perry for $125,000.00 thereby intending to orchestrate a fraud on the bankruptcy estate. He never amended his schedules to reflect the $125,000.00 agreement. Also, Debtor, through his counsel[8] misinformed the Trustee as to the true nature of the Perry Sales Contract stating it was a lease for a summer rental arrangement; rather than a sales contract. This conduct deprived Debtor's bankruptcy estate of the opportunity to benefit from the higher sales price and constitutes a false oath or account.

Debtor is a practicing attorney and he drafted the Perry Sales Contract with the following:

> WHEREAS, SELLER's husband, ["Debtor"], is the current owner of record on an undivided 21% interest in the within described property, located at 257 Tarpon Blvd., Fripp Island, Beaufort County, South Carolina, subject to the equitable interest owned by SELLER and subject to the interest claimed by the Trustee of the Bankruptcy Court, Southern District of Georgia, and WHEREAS SELLER will obtain title to the within described property upon approval of the transfer of interest [from Debtor] SELLER's husband and the Trustee to the SELLER by the Bankruptcy Court
> .

---

[8] Debtor is bound by the actions of his counsel as his agent. Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 396 (1993)(clients are held accountable for the acts and omissions of their chosen counsel).

19

> .
> .
> .
> The purchase and sale of the subject property
> shall be closed on or before One(1) week after
> approval by the Bankruptcy Court referred to
> above.   Possession of the property shall be
> delivered to the BUYER at the closing; however,
> BUYER shall have the right to the use of the
> [Fripp Property] to the same extent as SELLER
> Immediately upon the execution of this
> Agreement.

Pl.'s Ex. 5 (emphasis added). As drafted, the Perry Sales Contract does not require notice of the Perry sale to the Trustee, or Debtor's creditors, or the approval of the Bankruptcy Court. When Debtor was negotiating his wife's $25,000.00 purchase of the property from the Trustee, he had already accepted Mr. Perry's offer to purchase the same property for $125,000.00. He structured the deal and drafted the Perry Sales Contract so that once the Trustee's sale to Mrs. Smith was consummated the Fripp Property would be out of Debtor's bankruptcy estate, and Debtor's creditors and the Trustee would never have notice of the $125,000.00 Perry agreement and sale. In addition, notwithstanding the fact the property was part of Debtor's bankruptcy estate as of June 2, 2014, Debtor drafted the contract, without notice to the Trustee, giving Mr. Perry the "right to use the property to the same extent as [Mrs. Smith] immediately upon execution of this Agreement." Pl.'s Ex. 5.

When the Trustee discovered the Debtor may be manipulating

the system, he contacted Debtor's counsel. At which time, Debtor's counsel misinformed the Trustee there was no sale to Mr. Perry, rather "it was for summer only." Tr. H'rg 05/17/16 93:8-14. This explanation initially satisfied the Trustee. Subsequently and after Debtor received his discharge, the Trustee received a call from Mr. Perry's counsel informing him of the Perry Sales Contract. As a result, the Trustee withdrew his Motion to Sell on July 8, 2014.

When it became apparent that the Trustee's sale to Mrs. Smith would not work, Mrs. Smith filed a state court separate maintenance action seeking title to the Fripp Property for her support and maintenance. According to the Trustee's complaint the only relief requested by Mrs. Smith in the state court action was title to the Fripp Property. Pl.'s Ex. 3-A. This was done without seeking relief from the Bankruptcy Code's §362 automatic stay. Debtor did not oppose transferring the Fripp Property to Mrs. Smith as part of their separate maintenance. The Trustee testified that he did not participate in the state court action because he viewed all such matters void ab initio in violation of the automatic stay. But for the fact the transfer was void ab initio, these actions could have eliminated Debtor's bankruptcy estate's interest in the Fripp Property and the need for proper notice and approval. Given Debtor's conduct, the Court finds the UST has established a material false oath or account in connection with the Debtor's bankruptcy.

21

Next, the UST must establish Debtor made this false oath knowingly and fraudulently. A debtor's fraudulent intent "may be based on circumstantial evidence or inferred from the surrounding facts and circumstances." In re Matus, 303 B.R. 660 (Bankr. N.D. Ga. 2004); In re Protos, 322 F. App'x 930, 936 (11th Cir. April 13, 2009)("Since it is unlikely that a debtor will admit that he intended to hinder, delay, or defraud his creditors, the debtor's intent may be established by circumstantial evidence or inferred from the debtor's course of conduct.")(quoting In re Jennings, 533 F.3d 1333, 1339 (11th Cir. 2008)). Courts often look to see if "badges or fraud" are present:

> (i) the lack of adequate consideration for the transfer; (ii) the family, friendship, or close relationship between the parties; (iii) the retention of possession, benefit, or use of property in question by the debtor; (iv) the financial condition of the party sought to be charged prior to and after the transaction in question; (v) the conveyance of all of the debtor's property; (vi) the secrecy of the conveyance; (vii) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring debt, onset of financial difficulties, or pendency or threat of suit by creditors; and (viii) the general chronology of the events and transactions under inquiry.

In re Matus, 303 B.R. at 672-73.

In this case, several factors lead the Court to infer Debtor's fraudulent intent to conceal his agreement with Mr. Perry

22

and the Perry Sales Contract from the Trustee.   The general chronology and cumulative effect of the events gives rise to an inference of fraudulent intent.  First, Debtor initially asked the Trustee to abandon the Fripp Property to Mrs. Smith.  When that did not work, Debtor met with the Trustee and extended Mrs. Smith's offer to purchase the Fripp Property for $20,000.00.  At that time, Debtor had already accepted Mr. Perry's offer to purchase the same property for $125,000.00.  Within days of the Trustee agreeing to sell the bankruptcy estate's interest in the Fripp Property to Mrs. Smith for $25,000.00, Mr. Perry and Mrs. Smith signed the Perry Sales Contract drafted by Debtor for Mrs. Smith's sale of the Fripp Property to Mr. Perry for $125,000.00, and which also allowed Mr. Perry to use the property immediately upon the execution of the sales contract to the same extent as Mrs. Smith.  When that did not work, within days of the Trustee's withdrawal of his Motion to Sell, Mrs. Smith filed the state court separate maintenance action to remove the Fripp Property from Debtor's bankruptcy estate.  In the state court action, Debtor, while in bankruptcy, conceded by proffer that the Fripp Property belonged to Mrs. Smith and conceded to an order whereby the Debtor was required to transfer his interest in the Fripp Property to Mrs. Smith and executed a quit claim deed conveying the property to Mrs. Smith.  Debtor's conduct and lack of candor show a fraudulent intent to conceal his agreement with Mr.

23

Perry and to structure the Perry sale to benefit his wife to the detriment of Debtor's bankruptcy estate.

At the hearing, Debtor contended Mrs. Smith's divorce counsel proceeded with the state court domestic action contending the Eleventh Circuit's <u>Carver v. Carver</u>, 954 F.2d 1573, 1576-77 (11th Cir. 1992) excuses the failure to obtain relief from the Bankruptcy Code's §362 stay in domestic cases. However, <u>Carver</u> does not say the §362 automatic stay does not apply to all domestic matters, as the Eleventh Circuit explains:

> Section 362(b)(2) provides an exception from the automatic stay for "the collection of alimony, maintenance, or support from property that is not property of the estate." Although appellants are correct that this provision addresses alimony and child support, it clearly does not provide an exception from the automatic stay for all actions involving alimony, maintenance, or support. For example, the Ninth Circuit has interpreted the language of this exception as applying only to actions for collection of alimony, maintenance, or support, not actions for modification of child support. <u>In re Stringer</u>, 847 F.2d 549, 552 (9th Cir. 1988).
>
> More importantly, this provision expressly limits its coverage to actions seeking "property that is not property of the estate." Under 28 U.S.C. § 1334(d), the federal district court has exclusive jurisdiction over all the debtor's property as of the date of filing in bankruptcy and over all property of the estate. "Property of the estate" generally includes all the debtor's property as of the commencement of the bankruptcy case. <u>See</u> 11 U.S.C. §541.

24

Carver, 954 F.2d at 1576-77; see also 28 U.S.C. §1334(c) and (d)(abstention is not to be "construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy."). There is no dispute at the time of the domestic proceedings the Fripp Property was property of Debtor's bankruptcy estate therefore any action taken without relief from the stay is void ab initio. Borg-Warner Acceptance Corp. v. Hall, 685 F.2d 1306, 1308 (11th Cir. 1982)(actions taken in violation of the automatic stay are void and without effect); see also In re Albany Partners, Ltd., 749 F.2d 670, 675 (11th Cir. 1984); Alley Cassetty Co., Inc. v. Wren, 502 B.R. 609 (N.D. Ga. 2013)(holding actions taken in violation of the stay are void ab initio even when taken without notice of the bankruptcy stay).

Another badge of fraud is that Debtor structured the transaction to an insider (Debtor's non-debtor wife) and a close family friend, Mr. Perry. See Husky Intern. Elec., Inc. v. Ritz, 136 S.Ct. 1581, 1587 (2016)("Fraudulent conveyances typically involve 'a transfer to a close relative, a secret transfer, a transfer of title without transfer of possession, or grossly inadequate consideration . . . ."). Debtor and his family would financially benefit from Mrs. Smith's sale of the property for $125,000.00, as Debtor's financial obligations would be eased and

25

AO 72A
(Rev. 8/82)

diminished.

Debtor's own testimony reveals his state of mind. Debtor admits he carefully listened to the Trustee's questions. Tr. H'rg 05/17/16 247:1-14. If the Trustee asked him directly about pending efforts to sell the Fripp Property, Debtor said he knew he had to answer truthfully, but he did not consider himself obligated to voluntarily disclose the offer or the terms of the Perry sale. He considered the whole process to be a negotiation with the Trustee. He was negotiating to purchase the Fripp Property without telling the Trustee of the $125,000.00 agreement. As a lawyer, Debtor structured the transaction to not have to voluntarily disclose the Perry sale because once the Trustee's sale/transfer to his wife was consummated, the bankruptcy estate's ownership interest terminated. Mrs. Smith would then sell the property to Mr. Perry for $125,000.00 without ever notifying the Trustee or Debtor's creditors of the Perry agreement or sale. Debtor never voluntarily disclosed that he had an agreement to sell the Fripp Property to Mr. Perry for $125,000.00. Debtor also never amended his schedules to increase the value of the Fripp Property. Even worse, Debtor through his counsel, mischaracterized the true nature of the Perry Sales Contract as a lease, further distorting the facts. Debtor also tried to conceal the Perry Sales Contract by not providing a copy of it to the Trustee until it was subpoenaed. In this process Debtor

26

acted as though he was an attorney negotiating a deal for his client (himself and his wife); not as a debtor in bankruptcy with an ongoing duty of disclosure and candor.

Debtors in bankruptcy have a duty to cooperate with the trustee to enable the trustee to perform his duties under the Bankruptcy Code, namely provide for an orderly distribution. 11 U.S.C. §521(a)(3); Fed. R. Bankr. P. 4002(a)(4). Debtors have a duty to surrender to the trustee "all recorded information, including books, documents, records, and papers relating to property of the estate . . . ." 11 U.S.C. §521(a)(4). This is an ongoing duty. Robinson v. Tyson Foods, Inc., 595 F.3d 1269, 1274 (11th Cir. 2010)("A debtor seeking shelter under the bankruptcy laws has a statutory duty to disclose all assets, or potential assets to the bankruptcy court. 11 U.S.C. §§521(1), 541(a)(7). The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather the debtor must amend [his] financial statements if circumstances change."); Burnes v. Pemco, 291 F.3d 1282, 1286 (11th Cir. 2002). Debtors also have a duty of candor and to make truthful disclosures. Burnes, 291 F.3d at 1286. In Burnes, the Eleventh Circuit stressed the importance of a debtor's duty of candor and disclosure in the bankruptcy process:

> The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather, a debtor must

27

> amend his financial statements if circumstances
> change. See Coastal Plains, 179 F.3d at 208.
> Full and honest disclosure in a bankruptcy case
> is "crucial to the effective functioning of the
> federal bankruptcy system." Ryan Operations
> G.P. v. Santiam-Midwest Lumber Co. et al., 81
> F.3d 355, 362 (3d Cir. 1996). For example,
> creditors rely on a debtor's disclosure
> statements in determining whether to contest or
> consent to a no asset discharge. Bankruptcy
> courts also rely on the accuracy of the
> disclosure statements when considering whether
> to approve a no asset discharge. Accordingly,
> "the importance of full and honest disclosure
> cannot be overstated."

Burnes v. Pemco, 291 F.3d at 1286 (emphasis added). In this case,

Debtor has failed to fulfill his ongoing duties as a debtor in

bankruptcy. The UST has established by a preponderance of the

evidence that Debtor has knowingly and fraudulently made a material

false oath in connection with his bankruptcy case.

Debtor argues there is no harm to his bankruptcy estate

because Mr. Perry's offer was to Mrs. Smith based upon the families'

personal relationship and would never have been extended to the

Trustee. However, Mr. Perry testified he wanted to help Debtor and

his wife and he would have purchased the Fripp Property from the

Trustee, if necessary. Tr. H'rg 05/17/16 52:5-13. Mr. Perry did

not state he would only purchase the Fripp Property from Mrs. Smith

only. In fact, Mr. Perry made the offer to Debtor and assumed

Debtor was getting the offer and contract properly approved by the

bankruptcy court. Tr. H'rg 05/17/16 44:5-17; 47:20-23; 48:1-8. In

fact Mr. Perry assumed he would have paid the $125,000.00 to Debtor's bankruptcy estate or Trustee. Id. at 52:5-13. Mr. Perry started getting anxious with summer approaching and he did not want to have to rent and buy a place. Tr. H'rg 05/17/16 44:18-25-45:5. He no longer desired to purchase the Fripp Property after his own counsel refused to close the deal because bankruptcy court approval had not been obtained. Tr. H'rg 05/17/16 51:12-25-52:1-4. His counsel told him, "[t]his thing isn't going to work. We need to get out." Id. Furthermore, Mrs. Smith would benefit from Debtor's successful completion of his bankruptcy and Trustee's distribution to creditors. The reduction of Debtor's debts would reduce Debtor's obligations which would financially benefit Debtor and those to whom he had financial obligations.

Debtor also argues the bankruptcy estate was not harmed because the Perry sale was never consummated. However, harm to the bankruptcy estate need not be shown. In re Chalik, 748 F.2d at 618. Debtor is under a duty to disclose and cooperate with the Trustee and his creditors are entitled to judge for themselves after full disclosure whether they were harmed or not. Id. at 618. As the Eleventh Circuit explained:

> It makes no difference that [the debtor] does not intend to injure his creditors when he makes a false statement. Creditors are entitled to judge for themselves what will benefit, and what will prejudice, them . . . .

29

AO 72A
(Rev. 8/82)

> The veracity of the bankrupt's statements is
> essential to the successful administration of
> the Bankruptcy Act.

Id. (internal citations omitted).   In In re Severino, 2011 WL
1118521, at * 6 (M.D. Fla. May 25, 2011), the court rejected the
debtor's argument that the bankruptcy estate was not harmed and
stated that it did not matter that the debtor thought his interest
was worth zero and valued them at zero on his schedules.   In re
Severino, 2011 WL 1118521, at * 6 (M.D. Fla. May 25, 2011).

Furthermore, even if harm to creditors is required,
Debtor's creditors have been harmed by his manipulation of the
process in an effort to divert sales proceeds from his bankruptcy
estate to his wife.   Debtor usurped this opportunity from his
bankruptcy estate.   Unlike the debtors in In re Matos, Debtor
orchestrated the process in a material way that would allow his
wife, an insider, to improperly retain proceeds from a sale that
should have gone to his bankruptcy estate.   See In re Matos, 267 F.
App'x at 888 (finding the false statements immaterial and the
omissions in schedules did not allow the debtor to receive an
improper benefit even if the errors in the schedules were left
uncorrected).   When the difficulties delayed the closing and raised
issues, Mr. Perry walked away from the deal on the advice of
counsel; but otherwise he was prepared to close with the Trustee.
Based upon the foregoing facts, the UST has established that the

AO 72A
(Rev. 8/82)

Debtor obtained the discharge through fraud and the fraud, if known, would have resulted in the denial of the discharge under 11 U.S.C. §727(a).

Next, the UST must prove that he had no knowledge of Debtor's fraud prior to Debtor's discharge. Debtor argues even if the UST's allegations are true, the Trustee was on notice of the possibility of fraud prior to Debtor's discharge and therefore the UST cannot assert a §727(d) claim. However, the statutory language of 11 U.S.C. §727(d)(1) states in pertinent part: "On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section . . . ." 11 U.S.C. §727(d)(1). The statute allows three separate entities to bring a revocation of discharge action -- a creditor, the trustee, or the UST. Courts that have considered imputing the knowledge of a creditor or the trustee to the United States Trustee have rejected this argument. See In re Staub, 208 B.R. 602 (Bankr. S.D. Ga. 1997)(stating that the debtor's appeal to equity with his own "unclean hands" was not well taken and finding that a creditor's knowledge of debtor's fraud prior to the bar date may not be imputed to the UST based upon the plain language of the statute); In re Larson, 553 B.R. 646 (Bankr. W.D. Mich. June 20, 2016)(holding that the chapter 7 trustee's knowledge possessed prior to discharge could not be imputed to the

31

United States Trustee under an agency theory); see also In re Lombard, 446 B.R. 344, 348 n. 9 (Bankr. W.D. Mo. 2010)(stating, in dicta, that "the plain language of §727(d)(1) appears to preclude the imputation of knowledge between the United States Trustee and a [chapter 7] panel trustee").

The Larson court looked at the plain language of §727(d) and noted it lists three distinct entities "the trustee, a creditor, and the United States Trustee." Larson, 553 B.R. at 650; see also 11 U.S.C. §727(d). The Larson court noted the statute "limits each party's right to request revocation of the discharge to the extent that 'the requesting party' knew of the debtor's alleged fraud prior to the entry of the discharge. A natural reading of this section suggests that this limitation on a party's ability to seek revocation of the discharge should apply only to the extent that party had knowledge of the debtor's alleged fraud." Id.

The Larson court reviewed the legislative history of §727(d) and concluded, when Congress added the United States Trustee to the list of parties entitled to bring the action, it was "'to make it clear that the U.S. Trustee may object to the granting of a discharge and may request the court to revoke a discharge.'" Larson, 553 B.R. at 650 (citing H.R. Rep. No. 99-764, at 28 (1986), reprinted in 1986 U.S.C.C.A.N. 5227, at 5240-41). When amending the statute, Congress knew of the different roles, duties, and

32

obligations of the United States Trustee and the chapter 7 panel trustee and opted to add the United States Trustee as a separate and distinct party to pursue §727(d) actions. Furthermore, not imputing a chapter 7 panel trustee's knowledge to the United States Trustee also is in line with Federal Rule of Bankruptcy Procedure 7041, which requires dismissal of an 11 U.S.C. §727 objection to discharge action to be noticed to the trustee, the United States Trustee, and other parties in interest. Fed. R. Bankr. P. 7041. After notice, the United States Trustee and other parties in interest are able to take up the objection to discharge even if the panel trustee no longer is pursuing the action.

The Larson court also rejected the debtor's argument that a chapter 7 panel trustee's knowledge should be imputed to the United States Trustee under an agency theory. The court looked to the different roles and functions the United States Trustee and chapter 7 panel trustee serve in the bankruptcy system. The chapter 7 trustee is on the ground and involved in the marshaling and disposing of assets of the bankruptcy estate whereas the United States Trustee serves a more supervisory role as the "watchdog over the bankruptcy process." Larson, 553 B.R. at 652. The United States Trustee is the watchdog of the process for the honest but unfortunate debtor and the bankruptcy system as a whole. The Larson court rejected the debtor's agency argument noting a chapter 7 panel

33

trustee sits by designation of the United States Trustee at the §341 meeting of creditors, but the panel trustee does not act on behalf of the United States Trustee in all instances. Id. at 653-54.

There is a limited agency relationship between the United States Trustee and the chapter 7 panel trustee at the §341 meeting, but the information given at the §341 meeting in this case would not be sufficient to have placed the Trustee or UST on notice of possible fraudulent conduct. When gathered for the §341 meeting, Debtor merely asked the Trustee to consider abandoning of the Fripp Property to Mrs. Smith. This is not enough to put the Trustee on notice of possible fraud and therefore not sufficient to put the UST on notice under an agency theory. Furthermore this information was not even given at the actual §341 meeting. This Court finds the analysis of Larson persuasive and concludes, in this case, the knowledge the Trustee may have had of Debtor's fraud may not be imputed to the UST for purposes of 11 U.S.C. §727(d).

Debtor also argues the UST's own knowledge of facts was sufficient to put him on notice of the possibility of any purported fraud prior to the Debtor's discharge. Conversely, the UST contends it did not have notice of sufficient facts of possible fraud until he received the Trustee's email, which was after the entry of Debtor's discharge. Pl. Ex. 13. The Court agrees with the UST.

Prior to discharge the UST had received: a copy of

34

Debtor's bankruptcy schedules valuing Fripp Property at $95,000.00; a copy of the Trustee's motion to sell Fripp Property for $25,000.00; and the withdrawal of the Trustee's Motion to Sell Fripp Property which was filed eight days before Debtor's discharge was entered. As the UST points out, there are any number of reasons why the Trustee would sell the Fripp Property at a price significantly less than the scheduled value, and why he would withdraw a motion to sell including without limitation, title issues, difficulties related to selling fractional shares, market changes, and valuation issues. In bankruptcy cases, motions to sell are frequently filed and subsequently withdrawn. Given the facts and circumstances of this case, the Court finds the UST did not have knowledge of sufficient facts prior to Debtor's discharge to put him on notice of the possibility of Debtor's fraud. See Mid-Tech Consulting, Inc. v. Swendra, 938 F.2d 885, 888 (8th Cir. 1991)(once creditor is on notice of possible fraud, "the burden is on the creditor to diligently investigate any possibly fraudulent conduct before discharge"); In re Paul, 2012 WL 4894581, at *4 (Bankr. N.D. Ga. August 20, 2012)("[t]he plaintiff must establish that it was not aware of facts that would have put the plaintiff 'on notice of a possible fraud'"); In re Vereen, 219 B.R. 691, 696 (Bankr. D.S.C. 1997)("[u]nder §727(d)(1), the plaintiff must show due diligence in investigating and responding to possible fraudulent conduct once he

35

or she is aware of it or is in possession of facts such that a reasonable person in his or her position should have been aware of a possible fraud.").

For these reasons, the Court finds the UST has carried his burden as to the elements of 11 U.S.C. §727(d)(1) that Debtor obtained the discharge by fraud; the UST possessed no knowledge of the fraud prior to the Debtor's discharge; and the fraud if known, would have prevented Debtor's discharge under 11 U.S.C. §727(a)(4).[9]

**11 U.S.C. §727(d)(2).**

Alternately, the Court finds Debtor's discharge should be revoked pursuant to 11 U.S.C. §727(d)(2). Section 727(d)(2) provides:

> (d) On request of the trustee . . . the court shall revoke a discharge granted under subsection (a) of this section if—
> .
> .
> .
>
>> (2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would

---

[9] Notwithstanding the foregoing, the Court does not conclude Debtor's purported inflated valuation of the personal property in the Perry Sales Contract rises to the level to revoke the discharge pursuant to §727(d). The personal property is of minor value and sales contracts involving personalty and realty often set forth aggressive personal property valuations for ad valorem tax purposes. Without commenting upon the legality/advisability of such valuations, the Court does not find this conduct rises to the level required for purposes of §727(d)(1).

36

> be property of the estate, and knowingly
> and fraudulently failed to report the
> acquisition of or entitlement to such
> property, or to deliver or surrender
> such property to the trustee.

11 U.S.C. §727(d)(2).  To prevail in an action under §727(d)(2) the

UST must establish by a preponderance of the evidence:

> (1) that the debtor acquired or became entitled
> to acquire certain property;
> (2) the property in question was property of
> the bankruptcy estate (or would be upon its
> acquisition);
> (3) the debtor failed to report the acquisition
> of or entitlement to such property or to
> deliver or surrender such property to the
> trustee; and
> (4) in so failing to report or deliver or
> surrender the property, the debtor acted
> knowingly and fraudulently.

In re Baker, 2006 WL 2079919, at *3 (Bankr. M.D. Ala. July 25,

2006).

Property of the estate consists of "all legal and

equitable interests of the debtor in property as of the commencement

of the case" and "proceeds, product, offspring, rents, or profits of

or from property of the estate."  11 U.S.C. §541(a)(1) and (a)(6).

During the bankruptcy, Debtor has a continuing duty to disclose and

amend his schedules.  See Burnes, 291 F.3d at 1286.  The Eleventh

Circuit in Robinson v. Tyson Foods, Inc., 595 F.3d at 1274 (11th

Cir. 2010) set forth the importance of full disclosure:

> Our court has emphasized the importance of full
> and honest disclosure in bankruptcy

37

> proceedings, stating that it is "crucial" to the system's "effective functioning." Id. A debtor seeking shelter under the bankruptcy laws has a statutory duty to disclose all assets, or potential assets to the bankruptcy court. 11 U.S.C. §§521(1), 541(a)(7). "The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather the debtor must amend her financial statements if circumstances change."

Robinson, 595 F.3d at 1274 (quoting Burnes, 291 F.3d at 1286).

In this case, Debtor owned the Fripp Property prior to his marriage to Mrs. Smith and he undoubtedly had an ownership interest in the property as of the petition date, even if that interest was subject to a purported equitable claim of his non-debtor wife. At the filing of the bankruptcy, Debtor's ownership interest in the Fripp Property became property of his bankruptcy estate. Debtor became entitled to acquire the $125,000.00 when he accepted Mr. Perry's offer to purchase the Fripp Property. The $125,000.00 would be proceeds of property of the bankruptcy estate and belong to Debtor's bankruptcy estate, subject to allowed claims and offsets. 11 U.S.C. §541(a)(1) and (6).

Debtor argues it was his wife that became entitled to the $125,000.00, not his bankruptcy estate. The UST and this Court disagree with Debtor's argument. At the time Debtor accepted Mr. Perry's offer, the Fripp Property belonged to his bankruptcy estate. Debtor used his skills as an attorney to structure the deal whereby

38

his wife, a non-debtor insider, benefitted from the sale to the detriment of Debtor's bankruptcy estate. Debtor's usurpation of his estate's entitlement to value the $125,000.00 Perry Sales Contract is redressed by 11 U.S.C. §727(d)(2). See Husky Intern. Elec., Inc. v. Ritz, 136 S.Ct. at 1587 ("Fraudulent conveyances typically involve 'a transfer to a close relative, a secret transfer, a transfer of title without transfer of possession, or grossly inadequate consideration . . . .").

As to the third factor, Debtor never informed the Trustee of Mr. Perry's offer to buy the Fripp Property for $125,000.00. In fact, Debtor's actions and inactions misinformed the Trustee as to the true nature of the Perry sale and the Perry Sales Contract. See In re Covino, 241 B.R. 673, 686 (Bankr. D. Idaho 1999)(the debtor's testimony "appears designed to convince the Trustee that no [] business or assets existed at all. That testimony concealed the existence and true ownership of the property. The conclusions naturally drawn from that testimony would lead the Trustee away from the [] business, and discovery or further investigation of facts related to it . . . . In total, these circumstances support the "knowing and fraudulent" nature of the concealment."). Debtor structured the transaction and withheld pertinent information in an effort to benefit his wife and himself, over his bankruptcy estate.

Strictly speaking, there is no overt act of

inducement to a trustee, preceding a clandestine disposition of estate assets that is to be redressed by the sanction of §727(d)(2). Perforce, the debtor's act is coupled with a failure to advise, notify, or obtain permission from the trustee. Its consummation is enabled by the pretense, the crafted semblance, that it is not being effected; the trustee either is unaware of the existence of the assets or does not know of the debtor's retention/acquisition and unauthorized disposition of them. The resultant harm lies in the trustee going on his or her way in the administration of the estate, without knowledge of the debtor's usurpation of value until after the assets are gone.

In light of all this, a debtor's conduct is "fraudulent" under §727(d)(2) where the debtor is aware of the wrongfulness or impropriety of the disposition, deliberately fails to make disclosure to the trustee, and harbors a simple intent to go ahead in the disposition, whether it is directly for the debtor's benefit or not.

In re Markey, 378 B.R. at 603 (emphasis added).   In this case, Debtor usurped the $125,000.00 away from the Trustee and his bankruptcy estate by deliberately structuring the transaction to benefit his non-debtor wife.   The harm is that the Trustee did not clearly understand Debtor's usurpation until after Mr. Perry no longer desired to be involved in the purchase of property.   Debtor's conduct altered the Trustee's administration of the bankruptcy estate and deprived it of the benefit of the Perry sale.

Lastly, as set forth in detail above, Debtor's fraudulent intent to conceal his agreement with Mr. Perry and the Perry Sales

40

Contract can be inferred from the facts and circumstances of this case. In re Thunberg, 641 F.3d 559, 559 (1st Cir. 2003)(affirming revocation of a debtor's discharge where debtor "acquired property that is property of the estate and knowingly and fraudulently failed to report the acquisition or entitlement to such property or to deliver or surrender such property to the trustee"); In re Cooper, 426 B.R. 227, 238-40 (Bankr. N.D. Tex. 2010)(inferring fraud from the debtor's course of conduct where the debtor concealed the fact he had received proceeds from the sale of real property); In re Franz, 540 B.R. 765, 780 (Bankr. D. Mont. 2015)("the 'fraudulently' part of 'knowingly and fraudulently,' is the same phrase is found under 727(a)(4), under which a discharge may be denied if a plaintiff shows that the debtor 'knowingly and fraudulently' made a false oath."). Based upon the foregoing reasons, the Court finds the UST has established Debtor became entitled to acquire certain property that would be property of the bankruptcy estate upon its acquisition, and that Debtor knowingly and fraudulently failed to report his entitlement to such property to the Trustee.

In closing, a bankruptcy discharge is for the "honest but unfortunate debtor." In re Fretz, 244 F.3d 1323, 1326 (11th Cir. 2001). A debtor's candid and full disclosure and cooperation are essential to the proper functioning and integrity of the bankruptcy system. Burnes, 291 F.3d at 1286. ("the importance of full and

41

AO 72A
(Rev. 8/82)

honest disclosure cannot be overstated."). The UST is one of the watchdogs of this process. In this case, Debtor did not fulfill this duty and has engaged in conduct requiring the revocation of his discharge.

For the foregoing reasons, Debtor's motion for partial judgment is ORDERED DENIED. Debtor's discharge is hereby ORDERED REVOKED pursuant to 11 U.S.C. §727(d)(1) and (d)(2).

SUSAN D. BARRETT
CHIEF UNITED STATES BANKRUPTCY JUDGE

Dated at Augusta, Georgia
this 31st day of March, 2017.

AO 72A
(Rev. 8/82)